# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF KENTUCKY
# CENTRAL DIVISION
# LEXINGTON

CRIMINAL ACTION NO.  5:22-33-KKC          *ELECTRONICALLY FILED*

UNITED STATES OF AMERICA                                                               PLAINTIFF

V.          **RESPONSE BY THE UNITED STATES TO DEFENDANTS'
            MOTION FOR A NEW TRIAL PURSUANT TO RULE 33**

**JORGE GONZALEZ MONTEAGUDO**
**MIGUEL ANGEL HOMEDES**                                                              **DEFENDANTS**

* * * * * * * * * * * *

Defendants Jorge Gonzalez Monteagudo and Miguel Angel Homedes were charged along with four other defendants for drug trafficking offenses. Both Monteagudo and Homedes were charged with conspiracy to distribute 5 kilograms or more of cocaine and distribution of 5 kilograms or more of cocaine. [R. 11: Indictment.] Both defendants proceeded to trial in March 2023 and were convicted. [R. 138: Verdict.]

Both defendants now move for a new trial pursuant to Federal Rule of Criminal Procedure 33. Defendant Homedes argues in his motion that the undersigned AUSA committed prosecutorial misconduct during his argument in rebuttal. [R. 168.] Defendant Monteagudo sets forth no additional argument in his

motion. He simply incorporates Homedes' motion as his own. [R. No. 169.] The United States opposes the motions for the reasons set forth below.

## I.     LEGAL STANDARD

Federal Rule of Criminal Procedure 33 allows the Court to vacate "any judgment and grant a new trial if the interest of justice so requires." Fed. R. Cr. P. 33(a). "[N]ew trial motions are disfavored and should be granted with caution." *United States v. Willis*, 257 F.3d 636, 645 (6th Cir. 2001). "Such motions are granted only in the extraordinary circumstance where the evidence preponderates heavily against the verdict." *United States v. Hughes*, 505 F.3d 578, 593 (6th Cir. 2007) (quotation marks omitted). In ruling on the motion, a district court may "assess[] the credibility of witnesses and the weight of the evidence." *Id*. But because a jury verdict is presumptively valid, the defendant has the burden of showing that the jury's verdict is against the weight of the evidence. *United States v. Hughes*, 505 F.3d 578, 592 (6th Cir. 2007). In their motions, the defendants claim that arguments made by the prosecution during rebuttal were improper and necessitate a new trial.

## II.     FACTS

During an investigation into a large drug trafficking organization, Drug Enforcement Administration (DEA) Task Force Officer Joshua Baker utilized GPS tracking data to follow two target vehicles to a rest stop off of I-75 in Scott County.

TFO Baker arrived there in time to capture video of the defendants delivering a duffel bag found to contain 10 kilograms of cocaine to codefendants Daniel Corona Serratos and Saul Vera. *See* Government Trial Exhibit 2. Upon their return to Fayette County, Serratos and Vera were stopped by police. The bag containing 10 kilograms of cocaine was located on the rear seat of the vehicle. Video and screen shots proved all of this. *See* Government Trial Exhibits 3a-b (Officer Paddock's body-worn camera video and 5a-b (Officer Weckerling's). Screen shots were introduced as Government Trial Exhibits 4 and 6a-g.

The defendants did not contest that the substances located in the duffel bag were cocaine. They stipulated that it was 10 kilograms of cocaine. [R. 129: Court Exhibit 1]; Government Trial Exhibits 20 and 21 (lab reports). DEA Task Force Officer (TFO) Thomas Clements testified that 10 kilograms is a distribution quantity, not personal use. [R. 167:  Samuel Thomas Clements, TR at 829.]

Saul Vera, a codefendant, was the driver of the vehicle who met with the defendants at the truck stop. Vera drove codefendant Daniel Corona Serratos to the location and witnessed the delivery of the duffel bag. Vera testified at trial and positively identified both defendants as the individuals who delivered the cocaine to Serratos.

## III. ARGUMENT

No prosecutorial misconduct occurred during the trial herein. If there is prosecutorial misconduct, it can be violative of an individual's due process rights. *Washington v. Hofbauer*, 228 F.3d 689, 708-09 (6th Cir. 2000). The Court applies "a two-step analysis to determine if alleged prosecutorial misconduct requires reversal." *United States v. Eaton*, 784 F.3d 298, 309 (6th Cir. 2015). The Court first determines whether the at-issue statement was improper. *Id.* If so, the Court determines whether the impropriety was "flagrant such that a reversal is warranted." *Id.* and *United States v. Carroll*, 26 F.3d 1380, 1388 (6th Cir. 1994). Four factors are relevant when evaluating flagrancy: "1) whether the conduct and remarks of the prosecutor tended to mislead the jury or prejudice the defendant; 2) whether the conduct or remarks were isolated or extensive; 3) whether the remarks were deliberately or accidentally made; and 4) whether the evidence against the defendant was strong." *Id.* Prosecutors are afforded "wide latitude . . . during closing argument." *United States v. Bradley*, 917 F.3d 493, 506 (6th Cir. 2019).

In the rebuttal portion of closing argument, the undersigned AUSA made the following remarks:

> Payment for these two individuals? It's no surprise that they didn't have money. They are getting paid by the source in Texas or Mexico. You know, whoever it was that recruited them to bring the cocaine up here is going to pay them. It's not Daniel Corona Serratos. That's the testimony you heard from Officer Clements and others,

4

> that's not how the arrangements work. They didn't exchange money for the cocaine at the time. And the Lexington group isn't responsible for paying the couriers, it's whoever they are working for in Texas or Mexico.

[R. 167:  Todd Bradbury, TR at 1022.]  This rebuttal argument was offered to counter the Defendants' claims that they were not members of the drug conspiracy because they were not caught with any U.S. currency in their possession. [R. 167: Noah Friend, TR at 999 ("So ask yourself, what was the motivation for Mr. Homedes to become involved in this drug conspiracy? Again, no evidence of cash.")]; [R. 167: Christopher Spedding, TR at 1012 ("They pull him over, they search his truck. And as Mr. Friend told you, they didn't find anything. No money, no drugs.").]

Neither defendant objected to these remarks during closing argument. As such, the Court reviews for plain error.  *United States v. Carter*, 236 F.3d 777, 783 (6th Cir. 2001).  To constitute plain error, the alleged misconduct must be "so exceptionally flagrant" that it "is grounds for reversal even if [the defendants] did not object to it."  *United States v. Carroll*, 26 F.3d 1380, 1385 n.6 (6th Cir. 1994).

The argument was not improper.  Both defendants argued during their closing remarks that the lack of U.S. currency in their semi-truck or on their persons was critical evidence as to their involvement (or lack thereof) in the drug conspiracy. Homedes lists fourteen quotes from the defendants' closing arguments

5

about the lack of money in the truck or on their persons. [R. 168 at 1030-31.] The allegedly improper portion of the government's rebuttal argument was a few sentences to explain *why* no cash was located on the defendants. It was based on TFO Clements' expert testimony. TFO Clements testified about the movement of drugs and drug proceeds in the Eastern District of Kentucky. Critically, his testimony clearly proved that money does not change hands during the distribution of large, kilogram-level deliveries. TFO Clements described, based on his training and experience, what "fronting drugs" means: "Basically it's - - the narcotics are supplied to someone to distribute here, and they don't have to pay for them in advance or pay when they receive them. They will pay for them after they have distributed the narcotics." [R. 167: Samuel Thomas Clements, TR at 830.]  *See also*, "Sometimes, depending on the arrangement with the distributors, it may be what we call fronted, given to the distributors for them to sell. And then once they've sold the quantity of cocaine, they will pay back or deliver the drug proceeds back to the distributor they purchased it from, or the organization they purchased it from." [*Id*. at 829.]

    The historical relationship between the participants is critical to the operation of large drug trafficking organizations. The defendants claim that the statements regarding payment by the sources of supply was improper. But those statements were based on TFO Clements' expert testimony, and other proof

presented at trial. Clements specifically testified that "this is a business for people" and that trust is key in the relationship. *Id* at 833. The money – for drugs or conspirators - would be paid at a later time. ("Usually there has to be some sort of connection that they have previously or someone willing to vouch for that person that they are able to be trusted to move that quantity of narcotics and pay back what they owe.) *Id.* at 831. ("Usually, if you're talking about somebody being trusted with that (sic) multiple kilograms, that they have a working relationship, prior working relationship.") *Id*. at 832.

    Investigators did not anticipate that they would find money on the defendants because money and drugs would typically not be exchanged simultaneously during a ten-kilogram drug deal. It was perfectly permissible for the government to remind the jury of this testimony. "That's the testimony you heard from Officer Clements and others, that's not how the arrangements work. They didn't exchange money for cocaine at the time." [R. 167: Todd Bradbury, TR at 1022.] The questions posed to TFO Clements and his testimony:

    Q.    And would it be typical in a drug organization for individuals to transport both large quantities of drugs and large quantities of money simultaneously?

    A.    No. It's not - - that's not common.

    Q.    Why?

> A. It's usually one or the other.
>
> Q. Why is it one or the other?
>
> A. It's just the way the organization runs. They don't want to lose - - if something happens, they don't want to lose both of those at the same time. And it helps to kind of separate the money. A lot of times they feel that - - they feel safer, that it's harder to articulate those are drug proceeds if there is no drugs with the money." *Id.* at 836.

The value of the cocaine distributed by the defendants was approximately $300,000 to $350,000. *Id.* 831-32. It was undisputed that the defendants traveled to Kentucky from south Texas. Whether the supplier operated out of south Texas, or Mexico, is not known. But, the "ultimate source of supply" was a cartel in Mexico. *Id*. at 833-34.

A prosecutor may argue all reasonable inferences that may be drawn from the evidence admitted at trial as they relate to the prosecutor's case. *United States v. Burroughs*, 465 F. App'x 530, 535 (6th Cir. 2012) ("The prosecutor's arguments were reasonable arguments designed to persuade the jury to believe the prosecutor's theory of the case."). The argument properly rebutted the defendants' attempts to claim that a lack of money on them, or in their truck, somehow negated their guilt, or their voluntary participation in the drug conspiracy. *See, e.g.*, *United States v. Reynolds*, 534 F. App'x 347, 368 (6th Cir. 2013) (holding remarks in

"response to defense counsel's . . . argument" proper); *Bedford v. Collins*, 567 F.3d 225, 233 (6th Cir. 2009); *Slagle v. Bagley*, 457 F.3d 501, 522 (6th Cir. 2006). Prosecutors, after all, may argue in closing argument. *Cristini v. McKee*, 526 F.3d 888, 901 (6th Cir. 2008); see also *Bradley*, 917 F.3d at 506 (noting "wide latitude" afforded). The arguments were proper rebuttal, not misconduct.

Even if the Court determines the argument was improper, it was not sufficiently flagrant to require reversal. The remarks legitimately argued the government's theory of the case as to the exchange of drugs and money. The remarks did not mislead the jury, nor unfairly prejudice the defendants. *United States v. Forrest*, 402 F.3d 678, 686 (6th Cir. 2005). Moreover, the district court properly instructed the jury that the attorneys' remarks are not evidence. [R. 136: Instructions at 553, 555.] Although the remarks were deliberate, they were isolated, made once during trial. *Forrest*, 402 F.3d at 686. And the evidence against the defendants – including a video of them delivering the duffel bag with 10 kilograms of cocaine to codefendants - was quite strong.

The jury was presented with sufficient evidence to convict the defendants. The jury's verdict is presumed to be valid, and the defendants bear the burden to show that the jury's verdict was against the weight of the evidence. *See Hughes* at 592. The defendants have not met their preliminary burden.

## *Conclusion*

The defendants' motion for a new trial should be denied.

                                  Respectfully Submitted,

                                  CARLTON S. SHIER, IV
                                UNITED STATES ATTORNEY

By:   *s/G. Todd Bradbury*
       Assistant United States Attorney
       260 West Vine Street, Suite 300
       Lexington, KY 40507
       (859) 685-4898
       Gary.T.Bradbury@usdoj.gov

## **CERTIFICATE OF SERVICE**

On August 16, 2023, I certify that I filed this document with the Clerk of the Court, using the CM/ECF System, which will send notice of the filing to all counsel of record.

                                  *s/G. Todd Bradbury*
                                  Assistant United States Attorney